# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CRIMINAL ACTION |
| v. ) | |
| ) | No. 09-20034-03-KHV |
| JESUS ROBLES, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## MEMORANDUM AND ORDER

A grand jury charged defendant with conspiracy to possess with intent to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. § 846 and possession with intent to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vii). See Indictment (Doc. #25). On December 14, 2009, a jury found Jesus Robles guilty on both counts and determined that both counts involved 100 kilograms or more of marijuana. On December 17, 2009, the Court vacated the jury's findings that the amount of marijuana on Counts 1 and 2 involved 100 or more kilograms. This matter is before the Court on the Motion Of Defendant Robles For New Trial (Doc. #139) filed December 28, 2009, the Motion Of Defendant Robles For Judgment Of Acquittal (Doc. #141) filed December 28, 2009 and the Government's Motion To Reconsider Order Of Dismissal (Doc. #143) filed January 15, 2010.

**I.     Defendant's Motion For New Trial**

    A.     Standards For Motions For New Trial

Rule 33, Fed. R. Crim. P., provides that a motion for a new trial may be granted "if required in the interest of justice." A motion for new trial under Rule 33 is not regarded with favor and is granted only with great caution. See United States v. Custodio, 141 F.3d 965, 966 (10th Cir. 1998).

The decision whether to grant a motion for new trial is committed to the sound discretion of the trial court. See id.

  B.  Analysis

Defendant argues that the Court erroneously admitted the testimony of Iran Rodriguez. Rodriguez testified that some time between July of 2008 and February of 2009, Robles told Iran Rodriguez that he was selling drugs for Jorge Cabada. Rodriguez also testified that he knew that Cabada was involved with marijuana trafficking because he was present when Cabada and others would talk about it. Rodriguez did not actually observe any such activity.

Defendant maintains that the Court should have excluded the testimony of Rodriguez under Rule 404(b) as evidence of prior bad acts. The government correctly notes that the testimony of Rodriguez about prior marijuana distribution by Cabada and Robles was not Rule 404(b) evidence because it was relevant to the charged conspiracy. Rule 404(b) only applies to evidence of acts extrinsic to the charged crime. United States v. Orr, 864 F.2d 1505, 1510 (10th Cir. 1988). An uncharged act may not be extrinsic if it was part of the scheme for which a defendant is being prosecuted, see id., or if it was "inextricably intertwined" with the charged crime such that witness testimony "would have been confusing and incomplete without mention of the prior act." United States v. Richardson, 764 F.2d 1514, 1521-22 (11th Cir.), cert. denied, 474 U.S. 952 (1985).

Because Cabada is connected to the conspiracy on or about February 17, 2009,[1] evidence

---

[1] The following evidence connects Cabada to the conspiracy on February 17, 2009:

1. Cereceres-Morales listed Cabada's cell phone as a local contact on the hotel information sheet when Cereceres-Morales checked in to the hotel on February 12, 2009.

2. The frequency of calls either directly or indirectly between Cabada, Robles
(continued...)

of distribution of marijuana by Cabada and Robles between July of 2008 and February of 2009 is inextricably intertwined with the conspiracy charged in the indictment.[2] See United States v. Collins, 97 Fed. Appx. 818, 825 (10th Cir. 2004) (prior acts that are virtually indistinguishable in kind from charged activity and primarily involve same parties are inextricably intertwined with charged conspiracy); United States v. O'Brien, 131 F.3d 1428, 1432 (10th Cir. 1997) (other acts outside time period charged in conspiracy indictment "intertwined" with acts charged); United States v. Wacker, 72 F.3d 1453, 1469 (10th Cir. 1995) (prior bad acts of one defendant up to 13 years before charged marijuana conspiracy integrally related to criminal activity charged in indictment

---

[1](...continued)
and Morales suddenly increased shortly before Cereceres-Morales arrived in Kansas City.

3. Cabada paid for Robles' airplane ticket from Los Angeles to Kansas City (Exhibit E-1) and the ticket was in the name of Isaac Botello (an alias used by Robles).

4. Cabada made several attempts to call Cereceres-Morales, Robles and Morales shortly after they were arrested. Cabada had the phone numbers of all three individuals on his speed dial.

[2] Defendant also argues that the Court should have excluded the testimony of Rodriguez under Rule 403, Fed. R. Evid. For reasons stated above and in the trial record, the Court finds that the probative value of the testimony of Rodriguez as to the charged conspiracy is not substantially outweighed by any of the factors under Rule 403 such as the danger of unfair prejudice or misleading the jury.

Defendant originally argued that the Court should exclude the testimony of Rodriguez about marijuana trafficking by Cabada as hearsay. At trial, the Court overruled defendant's objection. The testimony about marijuana trafficking by Cabada was admissible as a statement by a co-conspirator during the course and in furtherance of the conspiracy. See F.R.E. 801(d)(2)(E). In particular, Rodriguez testified that he overheard Cabada and others discussing marijuana distribution and payment for marijuana. In any event, the jury independently learned of the fact that Cabada was involved in drug trafficking based on the testimony of Rodriguez that Robles said he was involved in marijuana trafficking with Cabada. See F.R.E. 801(d)(2)(A) (party admission).

-3-

where government asserted long-standing pattern of drug activity). The Court therefore properly admitted the testimony of Rodriguez. Defendant's motion for a new trial is overruled.

**II.     Defendant's Motion For Judgment Of Acquittal**

   A.     Standards For Motions For Judgment Of Acquittal

In considering a motion for judgment of acquittal pursuant to Rule 29, Fed. R. Crim. P., the Court cannot weigh the evidence or consider the credibility of witnesses. See Burks v. United States, 437 U.S. 1, 16 (1978). Rather, the Court must view the evidence in the light most favorable to the government and determine whether the record contains sufficient evidence from which a jury might properly find defendant guilty beyond a reasonable doubt. United States v. White, 673 F.2d 299, 301 (10th Cir. 1982). The jury may base its verdict on both direct and circumstantial evidence, together with all reasonable inferences that can be drawn therefrom, in the light most favorable to the government. See United States v. Hooks, 780 F.2d 1526, 1531 (10th Cir.), cert. denied, 475 U.S. 1128 (1986). Acquittal is proper only if the evidence implicating defendant is nonexistent or is so meager that no reasonable jury could find guilt beyond a reasonable doubt. White, 673 F.2d at 301; see United States v. Brown, 995 F.2d 1493, 1502 (10th Cir.) (evidence supporting conviction must be substantial and must not raise mere suspicion of guilt), cert. denied, 510 U.S. 935 (1993), overruled on other grounds by United States v. Prentiss, 256 F.3d 971 (10th Cir. 2001).

   B.     Analysis

Defendant again argues that the government presented insufficient evidence to establish the elements of conspiracy and possession of marijuana with intent to distribute. Viewing all reasonable inferences from the direct and circumstantial evidence in a light most favorable to the government, however, a reasonable jury could find defendant guilty on both counts.

**III.    Government's Motion To Reconsider**

The government argues that the Court erred in vacating the jury's finding that the marijuana weighed 100 kilograms or more. At trial, the government presented evidence as to the weight of marijuana as follows:

> Government agents discovered 221 bundles of marijuana wrapped in essentially the same packaging. Each bundle weighed approximately one pound. The government sent two bundles for laboratory testing, along with small samples from ten of the remaining 219 bundles. Laboratory tests confirmed that the bundles were marijuana and determined that the total weight of the two bundles plus the samples from the ten other bundles was 0.9714 kilograms. Later, Special Agent Dana Suchma of the Drug Enforcement Administration helped oversee the weighing of the remaining 219 bundles. Agent Suchma used a scale which gives readings in increments of tenths of a pound. He determined that each of the 219 bundles of marijuana weighed 1.0 pounds. By using a conversion factor of .4536 kilograms/pound, he determined that the 219 bundles weighed 99.3384 kilograms. He therefore determined that in total, the marijuana weighed 100.3098 kilograms (99.3384 kg from 219 bundles plus 0.9714 kgs from marijuana sent to the laboratory).

Memorandum And Order (Doc. #138) at 2.

On defendant's motion, the Court held that absent speculation and conjecture, a reasonable fact finder could not determine that the amount of marijuana was 100 or more kilograms. See id. The Court noted that absent evidence about the precision of the scale or how the scale rounded item weights, the jury was left to speculate and guess whether the reading on the scale of 1.0 meant at least 1.000 or whether a smaller quantity such as 0.996 was sufficient to cause a reading of 1.0.[3] See

---

[3]     In particular, the Court concluded that to find that the total marijuana was 100 kilograms or more, the jury had to speculate that the 219 marijuana bundles on average weighed 0.997 pounds or more. The government agents had removed samples from ten of the 219 bundles. Accordingly, to find 100 kilograms or more total weight, the jury had to find that the 221 marijuana bundles on average weighed 0.997568 pounds or more. To properly distinguish weights between 0.995 and 1.004 pounds, the scale would need to read in increments of thousandths of a pound, that is two more decimal places than the scale which government agents used. Given that government
(continued...)

id. at 3.

The government argues that a jury could have reasonably inferred that the amount of marijuana was 100 kilograms or more. In particular, the government states that the jury could have relied on reasonable inferences concerning the weighing of the marijuana by the drug dealer who originally packaged it, i.e. that the drug dealer sought to weigh out exactly one pound bundles. Even though the government did not raise this argument in the past, it might be well taken as to the count of conspiracy to possess with intent to distribute 100 kilograms or more of marijuana. From the trial record, and consistent with the government's reasoning, the jury could reasonably conclude that the original packager sought to weigh out one pound bundles and that Robles and his co-conspirators intended to obtain 221 marijuana bundles weighing exactly one pound. The jury therefore could reasonably conclude that Robles conspired to possess with intent to distribute 100 kilograms or more of marijuana.[4] As to the possession count, however, absent speculation and conjecture, a reasonable fact finder could not determine that the amount of marijuana was 100 or more kilograms.[5] The

---

[3](...continued)
agents used a scale which read in increments of tenths of a pound, the jury was left to speculate whether the reading on the scale of 1.0 meant at least 1.000 or whether a smaller quantity such as 0.997 was sufficient to trigger a reading of 1.0 pound.

[4]     221 bundles x 1.000 lbs x .453592 kg/lb = 100.2 kg

[5]     The government argues that a drug dealer has financial and safety incentives to ensure that his scale is accurate. The Court agrees with this general proposition, which the government has not previously argued, but the fact that a drug dealer would want an accurate scale does not mean that he would care whether his scale read in increments of thousandths of a pound. No evidence suggests the level of precision which customers of drug dealers generally demand. The government has not shown or argued whether the incentives for drug dealers to have accurate scales are sufficient for them to obtain a scale more precise than the one which government agents used in this case. Absent evidence on this issue, the Court will not permit the jury to speculate that a drug dealer would use a scale which is more precise than the scales which government agents used in this case.

speculative nature of the government's calculation to reach 100 kilograms can be illustrated by a simple example. First, the Court assumes that agents used a scale which measured in increments of hundredths of a kilogram (a much more precise scale than the one used in this case). Next, assume that each of the 221 bundles weighed exactly one pound, which is .453592 kilograms. Because the scale measures in increments of hundredths of a kilogram, the reading would be .45 kilograms for each bundle or a total of 99.45 kilograms for 221 bundles.[6]

The government argues that a jury could have reasonably inferred that the amount of marijuana was 100 kilograms or more because a reasonable statistical analysis establishes approximately a 97 per cent probability that the marijuana weighed more than 100 kilograms. This contention is based on expert analysis which was not presented in evidence at trial and is not properly before the Court at this time. In addition, the government's analysis is based on speculation as to the precision and accuracy of the drug dealer's scale in pounds and an assumption that a drug dealer would not attempt to cheat his customer by shorting the amount by less than three one thousandths of a pound even though such an amount would go unnoticed by a customer who weighed the marijuana with a scale which reads in increments of tenths or hundredths of a pound. A drug dealer very well may desire to make accurate measurements on a scale with increments of tenths of a pound, but in this case that unit of measurement is utterly insufficient to distinguish

---

[6] The government does not address the Court's prior concern that by use of a conversion factor (for pounds to kilograms) which is known to four decimal places, the government has attempted to make the calculated weight of the 219 bundles in kilograms (99.3384) more precise than its actual measured weight in pounds (1.0 x 219). See Memorandum And Order (Doc. #138) at 4 n.4. In other words, by using a scale that measures the marijuana in increments of tenths (0.1) of a pound, the government asserts as evidence the amount of marijuana to the nearest ten thousandth (0.0001) of a kilogram. As explained before, the accuracy and precision of a measurement cannot be increased by converting the units from pounds to kilograms. See id.

between quantities of 0.995 and 1.004. The government asks the Court to infer (and let the jury infer) that because the original drug dealer had incentives to accurately weigh the marijuana at 1.0 pound, the average weight of each bundle of marijuana was at least 0.997568 pounds. Based on the trial record, such a conclusion would be based on speculation and conjecture.

**IT IS THEREFORE ORDERED** that the <u>Motion Of Defendant Robles For New Trial</u> (Doc. #139) filed December 28, 2009 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that the <u>Motion Of Defendant Robles For Judgment Of Acquittal</u> (Doc. #141) filed December 28, 2009 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that the <u>Government's Motion To Reconsider Order Of Dismissal</u> (Doc. #143) filed January 15, 2010 be and hereby is **SUSTAINED in part**. The Court reinstates the jury's finding that the amount of marijuana involved in Count 1 involved 100 or more kilograms of marijuana. The government's motion is otherwise overruled.

Dated this 23rd day of March, 2010 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge