## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | CRIMINAL ACTION |
| ) | No. 09-20034-03-KHV |
| v. ) | |
| ) | |
| JESUS ROBLES, ) | CIVIL ACTION |
| ) | No. 12-2262-KHV |
| Defendant. ) | |
| _____) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. #235) filed May 7, 2012. For reasons set forth below, the Court overrules defendant's motion.

## Factual Background

In February 2009, DEA agents conducted surveillance of a Mexican national, Taurino Cereceres-Morales, who had checked into a Best Western motel in Kansas City, Kansas. DEA agents suspected that Cereceres-Morales was involved in drug trafficking. Over the next several days, Jesus Robles and Juan Morales both joined Cereceres-Morales at the motel.

On February 17, 2009, the three men rented a U-Haul truck, drove to a Yellow Freight facility in Kansas City, Missouri and picked up 40 boxes which were labeled as cookies. The three men drove to the home of Joel Areguin and unloaded the boxes into his garage. DEA agents approached the garage and identified themselves. Areguin and Morales, who was renting a room in Areguin's home, gave written consent to search the premises. All four men denied ownership of the 40 boxes in the garage. The agents searched the boxes and discovered that seven boxes contained marijuana and cookies, and the remaining 33 boxes held only cookies. In total, the seven

boxes contained 221 bundles of marijuana.

In the ensuing investigation, the DEA learned that Jorge Cabada had paid for Robles's airfare to Kansas City and that the email address associated with the flight belonged to "George Cabada." Robles had flown to Kansas City under the alias "Isaac Botello" and entered the same name in the Yellow Freight visitor's log when he picked up the boxes. Isaac Botello was a real person who lived in California and had a California driver's license. DEA agents discovered a Missouri state identity card with the name Isaac Anthony Botello, and the same date of birth as the Isaac Botello in California, but with a picture that looked like Robles. Cereceres-Morales also gave Cabada's cell phone as a local contact number when checking into the Best Western motel.

On March 18, 2009, a grand jury charged Robles, Cereceres-Morales and Morales with conspiracy to possess with intent to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. § 846 and possession with intent to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vii). See Indictment (Doc. #25).

Robles filed a motion to suppress which asserted that in violation of his rights under the Fourth Amendment, law enforcement officers unlawfully searched the boxes which he was holding as a bailee. The Court overruled defendant's motion because he did not meet his initial burden to show lawful possession of the searched property. Defendant asserted that he had met his burden because DEA agents saw him drive a U-Haul truck with the boxes of cookies and marijuana a short distance from a gas station to a nearby residence in Kansas City, Kansas where two individuals unloaded the boxes and placed them in the garage. The Court held that these limited observations did not establish that (1) defendant gained possession of the boxes from someone with authority to grant permission or (2) defendant had possession of the boxes when agents seized them in the garage

of the residence.[1] The Court noted that even if defendant could show lawful possession of the boxes, he had not shown that he manifested a subjective expectation of privacy in the boxes. Indeed, defendant affirmatively denied owning the boxes and did not claim that he had any other possessory interest as a bailee or otherwise. In addition, defendant had not shown that after he delivered the boxes to the residence, he had a continued privacy interest in them. Defendant did not explain the terms of his alleged bailment or what duty he had after Morales and Areguin accepted the boxes and placed them in the garage.[2]

On November 16, 2009, pursuant to a plea agreement under Rule 11(c)(1)(C), Fed. R. Crim. P., Cereceres-Morales pled guilty. See Petition To Enter Plea Of Guilty And Order Entering Plea (Doc. #93).[3] Morales and Robles proceeded to trial. The jury found Morales not guilty on both counts. The jury found Robles guilty of both conspiracy to possess with intent to distribute marijuana (Count 1) and possession with intent to distribute marijuana (Count 2).[4] The Court sentenced Robles to 64 months in prison and four years of supervised release.

---

[1] Defendant acquired the boxes from Cereceres-Morales, who had picked them up from a Yellow Freight depot. The boxes were addressed to Luis Perez, and the record was devoid of evidence that Yellow Freight had lawful authority to release them to Cereceres-Morales.

[2] Shortly before trial, Morales also gave notice that he sought to suppress evidence from the search of the boxes. For similar reasons as with respect to Robles, the Court held that Morales did not have standing to challenge the search. Morales asserted that Arequin owned the residence and that he merely rented one room from Arequin.

[3] The agreement proposed a sentence of 60 months in prison and four years of supervised release. Plea Agreement Pursuant To Fed. R. Crim. P. 11(c)(1)(C) ¶ 3, attached to Petition To Enter Plea Of Guilty And Order Entering Plea (Doc. #93). On May 19, 2010, consistent with the recommended sentence in the plea agreement, the Court sentenced Cereceres-Morales to 60 months in prison and four years of supervised release.

[4] The jury also found that both counts involved 100 kilograms or more of marijuana. The Court denied defendant's motion for judgment of acquittal on both counts but vacated the jury's finding as to quantity on Count 2.

Robles appealed. He argued that the Court erred because it admitted testimony of Iran Rodriguez regarding prior uncharged misconduct by Robles.[5] The Tenth Circuit affirmed. See Order And Judgment (Doc. #225) filed September 1, 2011. The Tenth Circuit held that the testimony was properly admitted as intrinsic evidence of the charged marijuana distribution conspiracy and the danger of unfair prejudice did not substantially outweigh its probative value. See id. at 7, 12.

G. Gordon Atcheson represented defendant in the district court proceedings. Veronica S. Rossman represented defendant on appeal.

Liberally construed, defendant's motion alleges that Mr. Atcheson was ineffective because (1) before trial, he did not inform Robles about the benefits and disadvantages of going to trial versus pleading guilty, (2) he did not effectively present defendant's Fourth Amendment claim, (3) he did not obtain a reversal of defendant's conviction based on the admission of testimony of Iran Rodriguez and (4) he did not obtain a downward departure of defendant's sentence. Defendant's motion also alleges that Ms. Rossman was ineffective on appeal because she did not appeal the Court's ruling on defendant's Fourth Amendment claim (Claim 5) and she did not effectively argue that the Court had erred by admitting the testimony of Iran Rodriguez (Claim 6).

---

[5] At trial, Rodriguez identified Cabada from a photograph and testified that he had met Cabada in 2002 and socialized with him at the time, but had had no contact with him for at least the past 18 months. Rodriguez also identified Robles from a photograph. He had met Robles through Cabada, said Cabada and Robles were cousins, and felt that he had a good relationship with Robles. Rodriguez then testified that Robles and Cabada were involved in distributing marijuana. Rodriguez testified that Cabada had told him about his marijuana distribution. Rodriguez had also overheard Cabada's discussions about matters regarding marijuana, money and deliveries. Further, Rodriguez testified that at some point between July of 2008 and February of 2009, Robles stated that he was distributing marijuana with Cabada.

**Analysis**

The standard of review of Section 2255 petitions is quite stringent. The Court presumes that the proceedings which led to defendant's conviction were correct. See Klein v. United States, 880 F.2d 250, 253 (10th Cir. 1989). To prevail, defendant must show a defect in the proceedings which resulted in a "complete miscarriage of justice." Davis v. United States, 417 U.S. 333, 346 (1974).

To establish ineffective assistance of counsel, defendant must show that (1) the performance of counsel was deficient and (2) a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). To meet the first element, i.e. counsel's deficient performance, defendant must establish that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. In other words, defendant must prove that counsel's performance was "below an objective standard of reasonableness." United States v. Walling, 982 F.2d 447, 449 (10th Cir. 1992). The Supreme Court recognizes, however, "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; see United States v. Rantz, 862 F.2d 808, 810 (10th Cir. 1988), cert. denied, 489 U.S. 1089 (1989). As to the second element, the Court must focus on the question "whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).

**I.  Failure To Inform Defendant About Benefits Of A Guilty Plea (Claim 1)**

Defendant argues that Mr. Atcheson was ineffective because before trial, he did not inform him about the benefits and disadvantages of going to trial versus pleading guilty. See Motion Under 28 U.S.C. § 2255 (Doc. #235) at 4. Defendant offers no facts in support of this bare-bones

allegation. Defendant's reply also fails to specifically assert how counsel's performance was deficient. In his reply, defendant simply maintains that counsel was ineffective because he received a longer sentence (64 months) than his co-defendant who pled guilty (60 months). See Petitioner's [] Reply To Government's Response To Defendant's Motion Under § 2255 (Doc. #245) filed August 6, 2012 at 3-4. Defendant has not alleged specific and particularized facts which, if true, would entitle him to relief. Defendant has maintained his innocence and has not alleged or shown that he would have pled guilty if he had received different advice from his attorney. Accordingly, the Court overrules defendant's first claim for relief.

## II.     Failure To Effectively Present Fourth Amendment Argument (Claims 2 And 5)

Defendant argues that Mr. Atcheson was ineffective because he did not effectively present defendant's Fourth Amendment claim. See Motion Under 28 U.S.C. § 2255 (Doc. #235) at 5. Defendant argues that Ms. Rossman was ineffective on appeal because she did not appeal the district court rulings on the issue. See id. Defendant maintains that law enforcement officers searched sealed boxes without a warrant in violation of his rights as a bailee. See id.; Petitioner's [] Reply To Government's Response To Defendant's Motion Under § 2255 (Doc. #245) at 6. In ruling on defendant's motion to suppress, the Court previously addressed this argument as follows:

> Defendant argues that in violation of his rights under the Fourth Amendment, law enforcement unlawfully searched boxes of cookies and marijuana which he was holding as a bailee. The government argues that defendant lacks standing because he did not establish a reasonable expectation of privacy in the boxes. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. Fourth Amendment rights are personal and cannot be claimed vicariously. Rakas v. Illinois, 439 U.S. 128, 133-34 (1978); United States v. Valdez Hocker, 333 F.3d 1206, 1208 (10th Cir. 2003). Given the personal nature of the interest, standing is a matter of substantive Fourth Amendment law. Rakas, 439 U.S. at 140. Standing inquiries thus turn on the classic Fourth Amendment test: (1) whether defendant manifested a subjective expectation of privacy in the area

searched and (2) whether society is prepared to recognize that expectation as objectively reasonable. Valdez Hocker, 333 F.3d at 1208-09; United States v. Allen, 235 F.3d 482, 489 (10th Cir. 2000); United States v. Benitez-Arreguin, 973 F.2d 823, 827 (10th Cir. 1992). Defendant bears the burden to show that he had a legitimate expectation of privacy in the invaded place. See United States v. Gordon, 168 F.3d 1222, 1226 (10th Cir.), cert. denied, 527 U.S. 1030 (1999); see also United States v. Eckhrat, Nos. 07-4216, 07-4022, 2009 WL 1841695, at *8 (10th Cir. June 29, 2009) (proponent of motion to suppress has burden to show that his own rights were violated by challenged search); Allen, 235 F.3d at 489 (same).

Here, defendant asserts that as a bailee, he had lawful possession of the containers and a legitimate expectation of privacy in them. Mere physical possession or control of property is not sufficient, however, to establish standing to object to a search of that property. United States v. Conway, 73 F.3d 975, 979 (10th Cir. 1995); United States v. Arango, 912 F.2d 441, 444-446 (10th Cir. 1990), cert. denied, 499 U.S. 924 (1991). A defendant who asserts that he had lawful possession of searched property bears the burden to show that his possession of the property was lawful, i.e. that he gained possession of the property from the owner or someone with authority to grant permission. Benitez-Arreguin, 973 F.2d at 828; Arango, 912 F.2d at 445.

Defendant notes that DEA agents saw him drive a U-Haul truck with the boxes of cookies and marijuana a short distance from a gas station to a nearby residence in Kansas City, Kansas where two individuals unloaded the boxes and placed them in the garage. These limited observations, however, do not establish that (1) defendant gained possession of the boxes from someone with authority to grant permission or (2) defendant had possession of the boxes when agents seized them in the garage of the residence. Defendant acquired the boxes from Cereceres-Morales, who had picked them up from a Yellow Freight depot. The boxes were addressed to Luis Perez, and the record is devoid of evidence that Yellow Freight had lawful authority to release them to Cereceres-Morales. Defendant has not met his initial burden to show lawful possession of the searched property. See Benitez-Arreguin, 973 F.2d at 828; see also Eckhart, 2009 WL 1841695, at *9 (defendant lacks standing without link between himself and registered owner of vehicle); Valdez Hocker, 333 F.3d at 1209 (mere possession of car and car keys does not suffice to establish legitimate possessory interest); Conway, 73 F.3d at 979 (possession of motel room key and knowledge of registered occupant's first name insufficient to establish status as guest and standing to contest search); United States v. Rascon, 922 F.2d 584, 586-87 (10th Cir. 1990) (fact that friend loaned car to defendant insufficient to show that friend had lawful possession of car), cert. denied, 500 U.S. 926 (1991); United States v. Erwin, 875 F.2d 268 (10th Cir. 1989) (no standing where defendant did not introduce evidence to establish legitimate possession of vehicle). The Court therefore overrules defendant's motion to suppress. Even if defendant could show lawful possession of the boxes, he has not shown that he manifested a subjective expectation of privacy in the boxes. Indeed, defendant

> affirmatively denied owning the boxes and did not claim that he had any other possessory interest as a bailee or otherwise. See United States v. Anderson, 284 Fed. Appx. 977, 979-80 (3d Cir. 2008) (defendant voluntarily abandoned interest in safe through repeated denials of ownership); United States v. Miller, 274 Fed. Appx. 567, 568 (9th Cir. 2008) (defendant did not have reasonable expectation of privacy in bag where he denied ownership and relinquished control over bag); United States v. Denny, 441 F.3d 1220, 1228 (10th Cir.) (by denying ownership, defendant voluntarily relinquished reasonable expectation of privacy), cert. denied, 549 U.S. 914 (2006); United States v. Torres, 949 F.2d 606, 608 (2d Cir. 1991) (otherwise legitimate privacy interest may be lost by disclaiming or abandoning property, especially when actions or statements disavow any expectation of privacy). In addition, defendant has not shown that he had a continued privacy interest in the boxes after he delivered them to the residence. Defendant has not explained the terms of his alleged bailment or what duty he had after Morales and Areguin accepted the boxes and placed them in the garage. See Rakas, 439 U.S. at 134 (person aggrieved by illegal search of another person's premises or property suffers no Fourth Amendment violation); United States v. Wood, 6 F. Supp.2d 1213, 1223 (D. Kan. 1998) (defendant who is neither sender nor addressee lacks privacy right in package and cannot assert Fourth Amendment challenge); United States v. Cantrall, 762 F. Supp. 875 (D. Kan. 1991) (defendant cannot challenge search of package where he was not addressee and exhibited no expectation of privacy in it).

Memorandum And Order (Doc. #49) filed July 7, 2009 at 1-4 (footnotes from original included in text). Defendant has not shown how Mr. Atcheson could have argued the issue differently, or that if he had done so, the result would have been different. Likewise, defendant has not shown that Ms. Rossman's performance was deficient for failing to raise the issue on appeal or that if she had done so, the result of the proceeding would have been different. Accordingly, the Court overrules defendant's second and fifth claims related to the search of the boxes.

**III.     Failure To Effectively Object To Testimony Of Iran Rodriguez (Claims 3 And 6)**

Defendant claims that Mr. Atcheson was ineffective because he did not obtain a reversal of his conviction based on the admission of the testimony of Iran Rodriguez. Defendant also claims that Ms. Rossman was ineffective for failing to effectively appeal the Court's ruling to admit the testimony of Rodriguez. This Court has thoroughly addressed the issue and finds that defendant's

latest arguments do not call for a different conclusion. The Tenth Circuit affirmed the Court's ruling to admit the testimony and reasoned as follows:

> Here, we must determine whether Rodriguez's testimony regarding Robles and Cabada's marijuana distribution pertained to actions intrinsic to the charged marijuana conspiracy – making Rule 404(b) inapplicable – or concerned acts extrinsic to it – bringing the testimony within the scope of Rule 404(b). Robles argues the district court erroneously admitted Rodriguez's testimony. He claims his prior marijuana distribution with Cabada was extrinsic to the charged conspiracy and was subject to Rule 404(b) prohibition on the use of prior bad acts to show a defendant's character or propensity. We disagree. After a careful review of the record, we find Rodriguez's testimony was evidence of Robles and Cabada's relationship as well as their ongoing marijuana distribution and was intrinsic to the charged marijuana distribution conspiracy. Therefore, Rule 404(b) does not apply and the district court did not abuse its discretion when it admitted the testimony.
>
> Nonetheless, Robles contends the government did not charge an ongoing conspiracy and claims his distribution of marijuana with Cabada occurred at some unspecified point prior to the charged date of the conspiracy – "on or about February 17, 2009." Rodriguez's testimony, however, was that between July 2008 and February 2009 Robles stated he was distributing marijuana with Cabada. That is, Robles was distributing marijuana in the time leading up to the charged marijuana distribution conspiracy. Although the indictment alleges the conspiracy occurred around February 17, 2009, that does not preclude the existence of an uncharged conspiracy beginning before the charged term.
>
> Next, Robles claims there is no link between his marijuana distribution with Cabada and the charged conspiracy. But the district court found Cabada was connected to the charged conspiracy and cited various pieces of evidence supporting this finding. *See* R., Vol. 1 at 250 & n.1. Robles does not show why this finding is clearly erroneous. Nor do we see any reason to question it.
>
> Finally, Robles argues the two conspiracies are not inextricably intertwined because they are temporally removed, not part of a single criminal episode, and not preliminary to each other. As discussed, the two conspiracies involved the same people, same drugs, same offenses, and similar time periods. Thus, Robles's arguments are unpersuasive and fail to show the district court abused its discretion.
>
> In addition, the district court clearly focused on whether Rodriguez's testimony related to the charged conspiracy. In fact, during Rodriguez's testimony the court called the government to the bench and warned that it was unclear whether his testimony related to the charged conspiracy. The court directed the government to elicit testimony from Rodriguez demonstrating it involved the same conspiracy.

> The government then specifically questioned Rodriguez regarding Robles's involvement with Cabada in the marijuana distribution and its approximate time frame. After eliciting this testimony, the government approached the bench to confirm with the court that it had sufficiently tied Robles and Cabada's marijuana distribution together. The court confirmed the substance of Rodriguez's testimony with the government – that Robles had told Rodriguez he was distributing marijuana with Cabada – and overruled the objection to the testimony.
>
> The district court admitted evidence of prior marijuana distribution by Robles and Cabada, finding they were "inextricably intertwined with the conspiracy charged in the indictment." R., Vol. 1 at 251. Because Rodriguez's testimony was intrinsic evidence of the conspiracy, Rule 404(b) did not apply. In short, the district court's decision to admit Rodriguez's testimony was not an abuse of discretion. * * *
>
> Robles also argues the district court should have excluded Rodriguez's testimony under Rule 403. While not covered by Rule 404(b), intrinsic evidence is still subject to the requirements of Rule 403, which provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . or misleading the jury . . . ." FED. R. EVID. 403.
>
> Rodriguez's testimony was clearly probative of Robles's relationship with Cabada and his involvement in the marijuana distribution conspiracy. While a connection to a drug distribution conspiracy is prejudicial in the wider sense, we do not find the probative value of Rodriguez's testimony was substantially outweighed by the danger of unfair prejudice or misleading the jury. Robles argues the evidence was prejudicial, but fails to show how the evidence caused unfair prejudice or misled the jury. The government's case centered around the allegation that Robles was involved in a marijuana distribution conspiracy that included Cabada. Rodriguez's testimony regarding Robles's participation in marijuana distribution with Cabada is not unfairly prejudicial because it relates to the heart of the case.
>
> The district court did not abuse its discretion when it admitted Rodriguez's testimony.

Order And Judgment (Doc. #225) at 9-12. Defendant has not shown how counsel should have argued the issue differently in the district or appellate courts, or that if they had done so, the result would have been different.[6] Accordingly, the Court overrules defendant's claims that Mr. Atcheson

---

[6] Defendant argues that counsel should have argued that the admission of Rodriguez's testimony violated his right to confront Cabada. Defendant has not shown that if counsel had made such an argument, the Tenth Circuit likely would have reached a different result.

-10-

and Ms. Rossman were ineffective for failing to effectively argue that the admission of Rodriguez's testimony was erroneous.

## IV.     Failure To Obtain Reduced Sentence (Claim 4)

Defendant claims that Mr. Atcheson was ineffective at sentencing because he did not obtain a downward departure of defendant's sentence. Motion Under 28 U.S.C. § 2255 (Doc. #235) at 7. Defendant has not shown that counsel's performance was deficient. As explained above, to establish deficient performance, defendant must establish that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Strickland, however, mandates that the Court be "highly deferential" in its review of counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. The Court must not second guess counsel's assistance with the benefit of hindsight simply because defendant did not prevail on his arguments in favor of a reduced sentence. See id.

Here, although counsel did not convince the Court to impose a sentence lower than the guideline range, his strategy and conduct at sentencing were reasonable and competent. Even if the Court assumes that counsel's performance in presenting his arguments was somehow deficient, defendant has not shown a reasonable probability that if counsel had argued the issues differently, the result of the sentencing proceeding would have been different. The Court therefore overrules defendant's fourth claim for relief.

## V.     Motion To Amend Section 2255 Motion

Defendant asks to amend his Section 2255 motion to add a claim that employees of the BOP facility at D. Ray James Correctional Facility in Folkston, Georgia interfered with his legal mail and prevented him from adequately appealing his conviction. See Petitioner's [] Motion Requesting

Leave Of The Court To File Addendum To His Petition Pursuant To 28 U.S.C. § 2255 (Doc. #250) filed March 19, 2013; Petitioner's Emergency Motion For Issuance Of Order Ex Parte And Admits Evidence In Support (Doc. #248) filed December 31, 2012 at 3. Section 2255 provides a one-year period of limitation which ordinarily runs from the date on which the judgment of conviction becomes final. See 28 U.S.C. § 2255. When a defendant has filed an appeal, a judgment of conviction becomes final when the Supreme Court denies a petition for certiorari. Clay v. United States, 537 U.S. 522, 524-25 (2003). Here, the Supreme Court denied defendant's petition for a writ of certiorari on February 21, 2012. Therefore defendant had until February 21, 2013 to file a motion to vacate under Section 2255. Even though defendant did not formally seek leave to amend his Section 2255 motion until March 19, 2013, he had timely argued that during his appeal, BOP officials had interfered with his legal mail.

Rule 15 of the Federal Rules of Civil Procedure governs a motion to amend a Section 2255 petition if it is made before the one-year limitation period for filing a Section 2255 petition has expired. United States v. Ohiri, 133 Fed. Appx. 555, 559 (10th Cir. June 7, 2005). Because the government had responded to defendant's Section 2255 petition when defendant sought to amend his petition, Rule 15(a) required that defendant seek leave to amend. Although Rule 15(a) requires that leave to amend "be freely given when justice so requires," whether leave should be granted is within the trial court's discretion. See Woolsey v. Marion Labs., Inc., 934 F.2d 1452, 1462 (10th Cir. 1991). In this regard, the Court considers undue delay, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, and undue prejudice to the opposing party or futility of amendment. Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993). Untimeliness alone is a sufficient reason to deny leave to amend, however, especially when the party filing the motion has no adequate explanation for the delay. Pallottino v. City of Rio Rancho, 31 F.3d 1023,

1027 (10th Cir. 1994); Las Vegas Ice & Cold Storage Co. v. Far West Bank, 893 F.2d 1182, 1185 (10th Cir. 1990); First City Bank v. Air Capitol Aircraft Sales, Inc., 820 F.2d 1127, 1132-33 (10th Cir. 1987); Waddell & Reed Fin., Inc. v. Torchmark Corp., 223 F.R.D. 566, 630 (D. Kan. 2004). The Court has the discretion to deny leave to amend for untimeliness or undue delay without a showing of prejudice to the other party after looking to the reasons for the delay and the presence of excusable neglect. Steinert v. The Winn Group, Inc., 190 F.R.D. 680, 683 (D. Kan. 2000). If movant has been aware of the facts on which the amendment is based for some time prior to the motion to amend, the Court may properly deny the motion for failure to demonstrate excusable neglect. Braintree Labs., Inc. v. Nephro-Tech, Inc., 31 F. Supp.2d 921, 923 (D. Kan. 1998).

Here, the Court denies defendant leave to amend because (1) he has not shown that his proposed claim is properly brought in a Section 2255 petition,[7] and (2) the proposed amendment lacks substantive merit.[8]

---

[7] As noted, defendant asks to amend his Section 2255 motion to add a claim that employees of the BOP facility at D. Ray James Correctional Facility in Folkston, Georgia interfered with his legal mail and prevented him from adequately appealing his conviction. See Petitioner's Emergency Motion (Doc. #248) at 3. Defendant brought the same claim in a petition under 28 U.S.C. § 2241 in the Southern District of Georgia. See S.D. Ga. No. 512-137. On February 25, 2013, the Honorable Lisa Godbey Wood dismissed defendant's petition. In doing so, Judge Wood held that defendant's claims are more appropriately brought in a civil rights action. See Order dated February 25, 2013, attached to Petitioner's [] Motion Requesting Leave Of The Court To File Addendum To His Petition Pursuant To 28 U.S.C. § 2255 (Doc. #250) filed March 19, 2013. Judge Wood noted that "to the extent that Robles does attack the legality of his conviction or sentence by arguing that the alleged interference with his legal mail hindered his ability to pursue a direct appeal, . . . those claims should be brought in a motion pursuant to 28 U.S.C. § 2255." Id. at 2. Defendant has not shown that his proposed claim attacks the legality of his conviction or sentence.

[8] Defendant argues that he could not adequately appeal his conviction because BOP officials interfered with his legal mail. See Petitioner's [] Emergency Motion (Doc. #248) filed December 31, 2012 at 3. As explained above, defendant was represented by counsel on appeal and he has not alleged specific or particularized facts to show that counsel's performance on appeal was deficient or prejudicial or that absent the alleged interference with his legal mail, counsel likely would have obtained a different result on appeal.

**Conclusion**

The files and records in this case conclusively show that defendant is not entitled to relief. Moreover, defendant does not allege specific and particularized facts which, if true, would entitle him to relief. Accordingly, no evidentiary hearing is required. See 28 U.S.C. § 2255; United States v. Kilpatrick, 124 F.3d 218, 1997 WL 537866, at *3 (10th Cir. Sept. 2, 1997) (allegations of ineffective assistance must be specific and particularized; conclusory allegations do not warrant hearing); United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1988) (no hearing required where factual matters raised by Section 2255 petition may be resolved on record); United States v. Barboa, 777 F.2d 1420, 1422-23 (10th Cir. 1985) (hearing not required unless "petitioner's allegations, if proved, would entitle him to relief" and allegations are not contravened by record).

**Certificate Of Appealability**

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).[9] To satisfy this standard, the movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Saiz v. Ortiz, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting Tennard v. Dretke, 542 U.S. 274, 282 (2004)). For reasons stated above, the Court finds that defendant has not made a substantial showing of the denial of a constitutional right. Accordingly, the Court denies a certificate of appealability.

**IT IS THEREFORE ORDERED** that defendant's Motion Under 28 U.S.C. § 2255 To

---

[9] The denial of a Section 2255 motion is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability. See Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).

Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. #235) filed May 7, 2012 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that Petitioner's [] Emergency Motion For Issuance Of Order Ex Parte And Admits Evidence In Support (Doc. #248) filed December 31, 2012 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that Petitioner's [] Motion Requesting Leave Of The Court To File Addendum To His Petition Pursuant To 28 U.S.C. § 2255 (Doc. #250) filed March 19, 2013 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** as to the Court's ruling on defendant's motion under 28 U.S.C. § 2255.

Dated this 11th day of June, 2013 at Kansas City, Kansas.

                                        s/ Kathryn H. Vratil
                                        KATHRYN H. VRATIL
                                        United States District Judge